IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KAIFI LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 1:26-cv-23<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff KAIFI LLC ("KAIFI" or "Plaintiff") hereby alleges patent infringement against Defendant Apple Inc. ("Apple" or "Defendant") as follows:

## PARTIES

1. KAIFI is a corporation organized and existing under the laws of the State of Texas, having a principal place of business at 5700 Tennyson Pkwy 300, Plano, Texas 75024.

2. Defendant is a corporation organized and existing under the laws of the State of California, with principal places of business at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W. Parmer Lane, Austin, Texas 78729. Defendant may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

3. This patent infringement action arises under the patent laws of the United States, Title 35 of the United States Code ("U.S.C.") § 101 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284 and 285.

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a).

5. Defendant is subject to this Court's specific and general personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

6. Personal jurisdiction also exists over Defendant because it transacts substantial business either directly or through its subsidiaries, affiliates, or intermediaries, some or all of which are its agents or alter egos, with entities and individuals in this State and this District, by, among other things, making, using, selling, offering for sale, importing, advertising, making available, and/or marketing products and services that infringe one or more claims of the asserted patent, as alleged more particularly below.

7. Defendant has sufficient minimum contacts with this State and this District because it regularly solicits and transacts business herein, and/or because it has engaged in persistent conduct and/or has derived substantial revenue from goods and services provided in this State and this District.

8. Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, Defendant has committed acts of infringement in this District and has regular and established places of business in this District.

9. Defendant does business, offers to sell and sells infringing products and services throughout the United States, this State, and this District, and introduces infringing products and services into the stream of commerce knowing that they will be sold in the United States, this State, and this District.

10. Defendant has authorized sellers and sales representatives and/or does business, offers for sale and/or sells products and services pertinent to this Complaint across the United States, including throughout this State, including in and to consumers throughout this District.

11. Defendant owns and operates the www.apple.com website, which is accessible by, through, and in this District and its residents.

12. Defendant owns, leases, and/or operates in or out of one or more offices and/or other facilities in this District.

13. Defendant maintains regular and established places of business within this District, including at: offices at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W Parmer Lane, Austin, Texas 78729; manufacturing facility in Austin; engineering center at 320 S. Capital of Texas Hwy, West Lake Hills, Texas 78746; and retail stores located at 2901 S. Capital of Texas Highway, Austin, Texas 78746; 3121 Palm Way, Austin, Texas 78758; 7400

San Pedro Avenue, San Antonio, Texas 78216; 15900 La Cantera Parkway, San Antonio, Texas 78256; and 8401 Gateway Boulevard West, El Paso, Texas 79925.  The Defendant locations and facilities in this District are regular, physical, continuous, and established places of business.  Defendant established, ratified, and controls these places of business.  Defendant lists and describes these places of business on its own websites, on other public websites, and/or in its SEC filings.  Defendant employs thousands of employees at these places of business from which it conducts business, including the infringing conduct, in this District to its benefit.

14.     Defendant develops, makes, uses, imports, offers for sale, and/or sells in Texas and this District products and services that infringe the Asserted Patent.  Defendant, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and/or services in the United States, the State of Texas, and this District, including but not limited to infringing products as detailed below.  Defendant solicits and has solicited customers in the State of Texas and in this District.  Defendant has paying customers, who are residents of the State of Texas and this District, who each use and have used the infringing Defendant products and services in the State of Texas and in this District.

15.     Defendant maintains a permanent and/or continuing presence within this District, and/or has the requisite minimum contacts with this District such that this venue is a fair and reasonable one.  Defendant has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District, and has and continues to derive substantial revenue from infringing acts in this District.

## ASSERTED PATENT

16.     KAIFI owns the entire right, title, and interest in and to the following patent, including the right to seek damages for past and ongoing infringement:  U.S. Patent No.

8,446,385 ("the '385 Patent").

17. The '385 Patent is entitled "Electronic Device Having a Touch Panel and Operating Control Method." The '385 Patent was duly and legally issued by the United States Patent and Trademark Office. The named inventors are Hiroyuki Ito, Masami Ito, and Nobuko Ito. A true and correct copy of the '385 Patent is attached hereto as Exhibit 1.

18. The '385 Patent was originally assigned to JVC Kenwood Corporation and subsequently assigned to KAIFI on December 2, 2025.

19. The claims of the '385 Patent are directed to patent-eligible subject matter and satisfy the requirements of 35 U.S.C. § 101. The apparatus and methods taught by the '385 Patent solve technological problems and improve operating a touch panel by pointing means by, among other things, enabling sensing when a point means comes close to the touch panel and switching detection sensitivities. The patent explains that the problem in the prior art to "detect whether a user carries out an operation from the right or left side of the touch panel, it is necessary to provide the electronic device with an infrared sensor for detecting it, and detect an area where a user touches the touch panel with his/her finger. This brings a complex configuration to increase a cost and a load of calculation."[1] The '385 Patent provides a solution so different operations "can be carried out depending on a situation before a user touches the touch panel under a simple configuration"[2] and "a detection sensitivity control portion that switches, after the position detecting portion senses that the pointing means comes close to the first position, detection sensitivity of the position detecting portion from first sensitivity to the

---

[1] '385 Patent at 1:26-32.
[2] *Id.* at 2:15-19.

4

second sensitivity."[3]

20.     The specification of the '385 Patent describes embodiments implementing the technological solution of the invention, including exemplary techniques and improvements to electronic touch panel and pointing means devices.  In one example, a touch-panel system detects a pointing means at different distances above the panel surface using different detection sensitivities: "a position detecting portion that detects, when sensing that the pointing means comes close to a first position away from the touch panel by a first distance, a first coordinate on the touch panel corresponding to the first position," and "a second coordinate on the touch panel corresponding to the second position."[4]  As the specification explains: "The position detecting portion **101** senses whether or not the pointing means F moves to a position Ppc on the close plane Cp from a position situated away from the touch panel **12** beyond the close plane Cp.  If the position detecting portion **101** senses that the pointing means F moves to a position Ppc on the close plane Cp, the position detecting portion **101** detects a close coordinate Pc on the touch panel **12** based on the position Ppc on the close plane Cp.  In this case, the close coordinate Pc on the touch panel **12** *b* is a coordinate of a point at which a line that crosses the position Ppc and is perpendicular to the touch panel **12** crosses the touch panel **12**."[5]  The specification further explains: "The position detecting portion **101** further senses whether or not the pointing means F moves to a position Ppt on the contact plane Tp from the position Ppc on the close plane Cp.  If the position detecting portion **101** senses that the position means F moves to a position Ppt on the contact plane Tp, the position detecting portion **101** detects a contact coordinate Pt on the touch

---

[3] *Id.* at 1:36-63.

[4] *Id.* at 1:42-63.

[5] *Id.* at 4:52-67.

panel **12** based on the position Ppt on the contact plane Tp.  In this case, the contact coordinate Pt on the touch panel **12** is a coordinate of a point at which a line that crosses the position Ppt and is perpendicular to the touch panel **12** crosses the touch panel **12**, or a coordinate of a point at which the pointing means F contacts the touch panel **12**.  If the position detecting portion **101** senses that the pointing means F moves to a position Ppc on the close plane Cp from a position situated away from the touch panel **12** beyond the close plane Cp, the input time measuring portion **103** starts time measurement.  Then, if the position detecting portion **101** senses that the position means F moves to a position Ppt on the contact plane Tp from the position Ppc on the close plane Cp or a predetermined time elapses from a start time of the time measurement, the input time measuring portion **103** stops the time measurement."[6]

21.     Further, the '385 Patent describes exemplary techniques for controlling and implementing detection sensitivity and switching.  As an example, "detection sensitivity control portion **102** controls detection sensitivity at a time when the position detecting portion **101** detects the pointing means F.  More specifically, the detection sensitivity control portion **102** switches the detection sensitivity between close detection sensitivity and contact detection sensitivity."[7]  This is described as:  "When the position detecting portion **101** detects an amount of change of a capacitance value of a capacitor composed of a pair of adjacent electrodes, the capacitor is discharged. Namely, as a time interval at which the position detecting portion **101** detects an amount of change of a capacitance value of each capacitor is lengthened, a charge time lengthens, which increases electronic charges to be accumulated in each capacitor."[8]

---

[6] *Id.* at 5:1-28.

[7] *Id.* at 5:29-34.

[8] *Id.* at 6:39-46.

22. The specification explains close detection sensitivity: "In a situation where the position detecting portion **101** is set to the close detection sensitivity, if an amount of change of a capacitance value of any of capacitors exceeds a predetermined threshold, the position detecting portion **101** determines that the pointing means F moves to a position Ppc on the close plane Cp from a position situated away from the touch panel **12** beyond the close plane Cp. When the position detecting portion **101** senses that the pointing means F moves to the position Ppc on the close plane Cp, the position detecting portion **101** detects a close coordinate Pc based on amounts of changes of capacitance values of all capacitors."[9] The specification also explains contact detection sensitivity: "In a situation where the position detecting portion **101** is set to the contact detection sensitivity, if an amount of change of a capacitance value of any of capacitors exceeds a predetermined threshold, the position detecting portion **101** determines that the pointing means F moves to a position Ppt on the contact plane Tp from a position Ppc on the close plane Cp. When the position detecting portion **101** senses that the pointing means F moves to the position Ppt on the contact plane Tp, the position detecting portion **101** detects a contact coordinate Pt based on amounts of changes of capacitance values of all capacitors."[10]

23. The '385 Patent explains the technological improvement by which the "detection sensitivity control portion **102** switches a time interval at which the position detecting portion **101** detects an amount of change of a capacitance value of each capacitor, which switches the detection sensitivity of the touch panel **12** between the close detection sensitivity and the contact detection sensitivity. Namely, the detection sensitivity control portion **102** switches the time interval at which the position detecting portion **101** carries out detection such that the time

---

[9] *Id.* at 6:17-27.
[10] *Id.* at 6:28-38.

interval is shortened at a time when the detection sensitivity of the touch panel **12** is switched to the contact detection sensitivity."[11]  This solves problems of "deteriorate[ing] accuracy of detection of a coordinate on the touch panel"[12] and provides "enhance[d] accuracy of detection of a coordinate on the touch panel."[13]

24.     The '385 Patent specification describes further embodiments and exemplary techniques "if a touch panel with a resistance film is used as the touch panel **12**, the position detecting portion **101** detects a resistance value or a voltage value of the resistance film to detect a coordinate," wherein "the detection sensitivity control portion **102** controls a charge time, which controls an amount of change of a capacitance value of each capacitor, and switches the detection sensitivity.  However, the detection sensitivity control portion **102** may switch the detection sensitivity by changing a threshold for sensing movement of the pointing means F.  The touch panel **12** may be a touch panel capable of changing the detection sensitivity."[14]  For example, "[w]hen the position detecting portion **101** detects the close coordinate Pc and then detects the contact coordinate Pt, the operating control portion **104** starts to detect a direction of an operation and input" and "controls the controlled unit **1** *a* based on the determination result regarding a direction of an operation and input."[15]  Different embodiments disclose determining "an X difference value," "a Y difference value," "from the right to the left," "from the left to the right," "from the top to the bottom," "from the bottom to the top," and "an angle θ."[16]

---

[11] *Id.* at 7:14-19.

[12] *Id.* at 6:61-62.

[13] *Id.* at 7:12-13.

[14] *Id.* at 7:29-33.

[15] *Id.* at 8:11-9:5.

[16] *See, e.g., id.* at 8:11-23, 8:24-9:5, 10:58-11:23, 15:10-28.

8

## ACCUSED INSTRUMENTALITIES

25. Defendant makes, uses, sells, and/or offers to sell in, and/or imports into the United States systems, products, devices, components, and/or services that infringe one or more claims of the Asserted Patent (the "Accused Instrumentalities").

26. The Accused Instrumentalities that infringe the '385 Patent include at least systems, products, devices, components, and/or services that implement touch panels with hover detection and control operations, including but not limited to Apple iPad, Apple iPad Air, Apple iPad Mini, Apple iPad Pro, Apple Pencil, and Apple Pencil Pro devices.

27. Appendix A provides a non-exhaustive list of Accused Instrumentalities.

## COUNT I – INFRINGEMENT OF THE '385 PATENT

28. The '385 Patent is valid and enforceable.

29. Defendant infringes at least claims 1-6 of the '385 Patent.

30. Appendix B details the manner in which the Accused Instrumentalities infringe by way of an exemplary chart as illustrated through a representative example. On information and belief, infringement of this patent by other Accused Instrumentalities is materially or substantially the same.

## NOTICE AND INFRINGEMENT

31. Defendant had actual and/or constructive prior notice of the Asserted Patent and/or its infringing activities. In addition, Defendant has actual notice and knowledge of the Asserted Patent and/or its infringing activities no later than the filing of this Complaint and/or the date this Complaint was served upon Defendant. To the extent that Defendant contends it lacked actual knowledge of the Asserted Patent and/or its infringing activities before the time of service of this Complaint, it was willfully blind by deliberately avoiding investigating,

inspecting, and/or instructing its employees not to investigate the Asserted Patent and/or its infringing activities.

32. Defendant has committed and continues to commit acts of direct infringement of the Asserted Patent by making, using, selling, offering to sell, and/or importing in and into the United States, this State, and this District the Accused Instrumentalities.

33. Defendant has been and is indirectly infringing the Asserted Patent by actively inducing or contributing to the direct infringement by others, in the United States, this State, and this District.

34. Defendant has induced and continues to induce its subsidiaries and affiliates, customers, and other third parties, such as resellers and end-consumers, to directly infringe the Asserted Patent by making, using, selling, offering to sell, and/or importing into the United States the Accused Instrumentalities through affirmative acts.

35. The affirmative acts of inducement by Defendant include, but are not limited to, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, offering for sale, promoting, and dissemination of the Accused Instrumentalities and their components; and creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information relating to the Accused Instrumentalities.

36. Defendant took active steps to encourage end users to use and operate the Accused Instrumentalities, despite knowing of the Asserted Patent in the United States, in a manner it knew directly infringes each element of the claims of the Asserted Patent. Further, Defendant provided product manuals and other technical information that cause its subscribers, customers, and other third parties to use and to operate the Accused Instrumentalities for their

ordinary and customary use, such that these third parties have directly infringed the Asserted Patent, through the normal and customary use of the Accused Instrumentalities.

37. Defendant specifically intended and was aware that the ordinary and customary use of the Accused Instrumentalities would infringe the Asserted Patent.

38. Defendant knew that the induced conduct would constitute infringement, and intended said infringement at the time of committing the aforementioned acts, such that those acts and conduct have been and continue to be committed with the specific intent to induce infringement, or to deliberately avoid learning of the infringing circumstances at the time those acts were committed, so as to be willfully blind to the infringement they induced.

39. Defendant has contributed and continues to contribute to the infringement of its subsidiaries and affiliates, customers, and other third parties, such as resellers and end-consumers of Accused Instrumentalities, to directly infringe the Asserted Patent by offering to sell, selling or importing within or into the United States, this State and this District a component of the Accused Instrumentalities, which constitutes a material part of the invention and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

40. Defendant knew and knows that the component is especially made or adapted for use in infringement of the Asserted Patent.

41. Defendant also infringes jointly and/or vicariously.  Defendant engages or participates in a joint enterprise and/or collective conduct of making, using, offering to sell, selling, and/or importing of the Accused Instrumentalities with at least one or more subsidiaries and affiliates, customers, and/or other third parties.  Defendant acts under or provides the direction and/or control of one or more different parties.  The infringing acts of subsidiaries, affiliates, customers and other third parties are attributable to Defendant.

42. Defendant's conduct constitutes willful infringement of the Asserted Patent. Defendant has had knowledge of the Asserted Patent and infringement thereof, and yet has deliberately and intentionally continued to infringe with reckless disregard for KAIFI's patent rights. Defendant's use of the Asserted Patent is not licensed or authorized by KAIFI in any way. Therefore, Defendant is liable for infringement of the Asserted Patent and that infringement has been and continues to be willful in nature.

43. KAIFI has incurred and will continue to incur substantial damages; and has been and continues to be irreparably harmed by Defendant's infringement. Therefore, KAIFI is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre- and post-judgment interest, enhanced damages, attorney fees, and costs.

44. KAIFI is in compliance with the marking or notice requirements of 35 U.S.C. § 287 to the extent applicable. As of the filing of this action, no patentee or licensee has made, offered for sale, or sold within, or imported into, the United States any patented article requiring marking. The filing of this action constitutes notice.

## PRAYER FOR RELIEF

WHEREFORE, KAIFI respectfully requests that this Court:

A. Enter judgment in favor of KAIFI that the Asserted Patent is valid and enforceable;

B. Enter judgment that Defendant has infringed one or more claims of the Asserted Patent, in violation of the United States Code, including, without limitation, 35 U.S.C. § 271;

C. Enter judgment that Defendant's infringement is or has been willful;

D. Award KAIFI damages adequate to compensate KAIFI for Defendant's past infringement, and any continuing or future infringement through the date such judgment is

entered, including prejudgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

  E. Increase damages awarded to KAIFI in this case to three times the damages amount found by the jury or assessed by the Court pursuant to 35 U.S.C. § 284;

  F. Declare this case exceptional and award KAIFI its reasonable attorney fees and costs incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 285;

  G. Enjoin Defendant and its subsidiaries, and their officers, agents, servants, employees, and all persons in active concert with any of the foregoing from further infringement of the Asserted Patent, or if its infringement is not enjoined, that Defendant be ordered to pay KAIFI ongoing royalties for any post-judgment infringement of the Asserted Patent; and

  H. Grant KAIFI all such other relief as the Court deems just and reasonable.

## **DEMAND FOR JURY TRIAL**

KAIFI demands a jury trial on all issues so triable pursuant to Federal Rule of Civil Procedure 38 and other applicable law.

Date:   January 6, 2026.                           */s/ Charles Ainsworth*

Charles Ainsworth
(Texas Bar No. 00783521)
charley@pbatyler.com
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, Texas 75702
Telephone: (903) 531-3535

*Attorneys for Plaintiff KAIFI LLC*